## Gaudenzia, Inc. *v.* Zoning Board of Adjustment and Lefever, et al., Intervenors.

356

Argued October 5, 1971, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and ROGERS. Judge MANDERINO did not participate in the decision.

*Peter Hearn*, with him *A. Clifford Pearlman* and *Pepper, Hamilton & Scheetz*, for appellant.

*Howard D. Scher,* Assistant City Solicitor, with him *John Mattioni,* Deputy City Solicitor, and *Levy Anderson,* City Solicitor, for appellee.

*Irvin Stander* for intervenors.

OPINION BY JUDGE KRAMER, February 14, 1972:

This is an appeal from an Opinion and Order of the Common Pleas Court of Philadelphia County, dated April 21, 1971, affirming the adjudication of the Zoning Board of Adjustment of Philadelphia (Board), dismissing the appeal of Gaudenzia, Inc. (Gaudenzia). The effect of this adjudication was to affirm the refusal by the zoning administrative officer to issue a use certificate to Gaudenzia.

On August 3, 1970, Gaudenzia (appellant) made application for a use certificate to operate a mansion-type structure, with two outbuildings, as a charitable institution for the following purpose: "Community processing and orientation center for narcotic addicts being transferred to recovery center outside Philadelphia with a community kitchen and fourteen bedrooms to accommodate fifteen-twenty transients for periods of fifteen-thirty days and administrative offices." Gaudenzia is a non-profit Delaware corporation, qualified to do business in Pennsylvania. Gaudenzia operates a self-help rehabilitation program for drug addicts. Its main base of operation is located in Chester County. Its proposed use of the Philadelphia property is to establish an orientation program, prior to admission to the Chester County facility, for drug addicts who voluntarily desire to withdraw from the use of drugs. Gaudenzia presently operates another orientation center in the City of Philadelphia, but owing to its poor state of repair, Gaudenzia entered into a conditional agreement to purchase the premises here in question. The premises have been vacant since 1968, and had

previously been used as a nursing home facility for about twelve years.

The application for the use certificate was refused, and Gaudenzia appealed to the Zoning Board of Adjustment on August 10, 1970. Five members of the Philadelphia Zoning Board of Adjustment (there being one vacancy at the time of the hearing) heard considerable testimony for and against the issuance of the use certificate. On December 7, 1970, the Board handed down its adjudication by a vote of three to two,* dismissing the appeal based upon its findings of fact and conclusions of law. Appeal was then taken to the Court of Common Pleas of Philadelphia County and that Court, on April 21, 1971, issued its Opinion and Order affirming the Board. The Court did not hold additional hearings, nor did it receive additional testimony or evidence.

The premises in question are located in an "R-9" zoning district, in which charitable institutional use is permitted "only if a Board of Adjustment Certificate is obtained. . . ."

Under the Philadelphia Code (Section 14-1803) a use certificate (which is identical to a "special exception" under other zoning ordinances in this Commonwealth) may be issued to an applicant presenting and satisfying certain criteria as follows:

"§14-1803 Criteria for Granting Zoning Board of Adjustment Certificates.

"(1) The Zoning Board of Adjustment shall consider the following criteria in granting a Zoning Board of Adjustment Certificate under §14-1801(1)(d):

"(a) that the grant of the Certificate will not substantially increase congestion in the public streets;

---

* Three Board members voted "yes" to grant the use certificate and two voted "no".

"(b) that the grant of the Certificate will not increase the danger of fire or otherwise endanger the public safety;

"(c) that the grant of the Certificate will not overcrowd the land or create an undue concentration of population;

"(d) that the grant of the Certificate will not impair an adequate supply of light and air to adjacent property;

"(e) that the grant of the Certificate will not adversely affect transportation or unduly burden water, sewer, school, park, or other public facilities;

"(f) that the grant of the Certificate will not adversely affect the public health, safety or general welfare;

"(g) that the grant of the Certificate will be in harmony with the spirit and purpose of this Title, and

"(h) that the grant of the Certificate will not adversely affect in a substantial manner any area redevelopment plan approved by the City Council or the Comprehensive Plan for the City approved by the City Planning Commission.

"(2) The applicant shall have the duty of presenting evidence relating to the criteria set forth herein."

Gaudenzia has raised three issues in this appeal. First, Gaudenzia argues that it was denied due process of law and equal protection under the law by virtue of the fact that the Philadelphia Code requires the affirmative vote of four members of the Board to reverse the denial of the application by the administrative officer. Secondly, Gaudenzia argues that the findings and conclusions of the Board were in fact the findings of the two minority members of the Board, and therefore erroneously are held out as the findings of the Board. And lastly, Gaudenzia argues that the Board abused its discretion in denying the use certificate by a finding, against the weight of the evidence,

that Gaudenzia's proposed use failed to meet the Philadelphia Code zoning criteria.

The Philadelphia Home Rule Charter (adopted by the electors on April 15, 1951) provides for the appointment by the mayor of five members of the Zoning Board of Adjustment (§3-911) and a sixth member who is the Commissioner of Licenses and Inspections appointed by the Managing Director, with the approval of the mayor (§3-206). All six are voting members. Section 14-1804 of the Philadelphia Code provides for a quorum of four members of the Board and requires the concurring vote of four members for any action of the Board. Under the Board's regulations,* we find the following language: "The concurring vote of four (4) members of the Board shall be necessary to reverse any order, requirement, decision or determination of any administrative officer, or to decide in favor of the applicant on any matter upon which the Board is required to pass."

There can be no doubt that the constitutional guarantee of due process of law is as equally applicable to administrative proceedings as it is to judicial proceedings. See *W. J. Dillner Transfer Co. v. Pennsylvania P.U.C.*, 175 Pa. Superior Ct. 461, 107 A. 2d 159 (1954), *Armour Transportation Co. v. Pennsylvania P.U.C.*, 138 Pa. Superior Ct. 243, 10 A. 2d 86 (1939), *Pittsburgh Press Company v. Pittsburgh Commission on Human Relations, et al.*, as not yet reported but filed in this Court on January 27, 1972. All of the reported cases which we have read confirm our understanding that due process of law is afforded when (1) the "accused" is informed with reasonable certainty of the nature of the accusation lodged against him and (2) he

---

* These regulations are substantially the same as the prior enabling authority, the Act of May 6, 1929, P. L. 1553, 53 P.S. §14759, requiring the concurring vote of four members of a five-man board.

has timely notice and opportunity to answer these charges and to defend against attempted proof of such accusations, and (3) the proceedings are conducted in a fair and impartial manner. Our review of the record of this case leads us to the conclusion that Gaudenzia was not denied its right to due process of law in this case.

The scope of review of this Court, in view of the fact that no additional testimony was taken in the court below, is to determine whether the Zoning Board of Adjustment clearly abused its discretion or committed an error of law. "Error of law" in this instance is used in its broad sense and includes questions of constitutionality. See Appeal of Facciolo, 440 Pa. 508, 269 A. 2d 699 (1970), and Rubin v. Zoning Board of Adjustment, 1 Pa. Commonwealth Ct. 406, 274 A. 2d 208 (1971).

Gaudenzia argues that it was denied its constitutional right to equal protection under the Fourteenth Amendment of the United States Constitution in that the Philadelphia Code, while providing for a six-member board, also requires the concurring vote of four members to approve the reversal of the zoning officer's refusal to grant a use certificate. At the time of the hearing in this case, as already noted above, there was one vacancy on the Board, and therefore five members of the Board heard the case. Gaudenzia argues that the requirement of four concurring votes, despite the fact that a vacancy existed, deprived it of equal protection in that more than a simple majority was necessary to review the action of the zoning administrator. We find no basis whereupon the City of Philadelphia is prohibited from providing for a six-member board. Likewise the City is free to require a four-member quorum and four-member concurrence. Gaudenzia has failed to present a cogent and convincing legal argument to this Court that the requirement of more than a simple ma-

jority is improper. Gaudenzia is not a member of a special class singled out and made subject to special voting proceedings. Every applicant is subject to the same procedural requirements. Therefore, in this case Gaudenzia was not denied equal protection under the laws.

A presumption of validity attaches to a zoning ordinance which imposes the burden of proving its invalidity upon the one who challenges it. *Cleaver v. Board of Adjustment,* 414 Pa. 367, 200 A. 2d 408 (1964), *R. Louis Corp. v. Board of Adjustment of Radnor Township,* 1 Pa. Commonwealth Ct. 292, 274 A. 2d 551 (1971). The Pennsylvania Supreme Court has repeatedly held, "One who challenges the constitutionality of a zoning ordinance has no light burden. . . ." *Glorioso Appeal,* 413 Pa. 194, 198, 196 A. 2d 668 (1964), citing *Village of Euclid v. Ambler Realty Co.,* 273 U.S. 365, 47 S. Ct. 114, 121 (1926). Gaudenzia has failed to carry this burden.

Gaudenzia next argues that in view of the fact that three members of the Board voted to reverse the zoning officer and grant the use certificate, and only two members of the Board voted in the negative, the Board erroneously issued as the Board's findings and conclusions those which were in fact the findings and conclusions of the two minority Board members. We sympathize with Gaudenzia that the result on its face appears anomalous owing to the awkward provisions of the Philadelphia Zoning Code. However, our review of the law leads us to conclude that there is nothing unlawful in requiring the concurrence of four members of the Board, regardless of the number in attendance at the determination of a particular issue, so long as there is a quorum.*

---

* It has been held by the Court of Common Pleas of Philadelphia in the case of *Hinton v. Zoning Board of Adjustment,* 86 D. & C. 192 (1953) that a recorded vote of less than four required

Under the circumstances requiring the concurrence of four members of a board, a use certificate must be denied in the absence of such a concurrence. Where, however, there is an appeal from that denial, it becomes necessary for the adjudicating body to issue findings of fact and conclusions of law in support of their denial so that a reviewing court may determine and evaluate the basis for the denial. In such a case our scope of review is to determine whether the findings of fact and conclusions of law of the Board (which represents the vote of the minority) constitute a manifest abuse of discretion or error of law on the part of the minority board members. In other words, we must review the record before the Board to determine whether the minority members capriciously disregarded the evidence in voting against the issuance of a use certificate, or committed a manifest abuse of discretion or error of law.

At this point we enter into a determination of the third issue raised by Gaudenzia, and that is whether or not the Board did abuse its discretion in denying Gaudenzia the use certificate. It is a well-settled principle of law that an appellate court must not substitute its findings of fact and conclusions for those of the adjudicator below unless there exists a capricious disregard of the testimony and evidence offered, a manifest abuse of discretion or error of law. This principle was enunciated in the case of *Blumenschein v. Pittsburgh Housing Authority*, 379 Pa. 566, 572-73, 109 A. 2d 331, 334 (1954), where the Court stated: "By a host of authorities in our own and other jurisdictions

---

a remand. By way of obiter dicta the Pennsylvania Supreme Court was critical of adjudications with less than a majority in the case of *Nunamaker v. New Alexandria Bus Co.*, 371 Pa. 28, 29, 88 A. 2d 697, 699 (1952), but we can find no holding which states that a legislative requirement of more than a simple majority vote for action of an adjudicative body is illegal or unconstitutional.

it has been established as an elementary principle of law that courts will not review the actions of governmental bodies or administrative tribunals involving acts of discretion, in the absence of bad faith, fraud, capricious action or abuse of power; they will not inquire into the wisdom of such actions or into the details of the manner adopted to carry them into execution. It is true that the mere possession of discretionary power by an administrative body does not make it wholly immune from judicial review, but the scope of that review is limited to the determination of whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions. That the court might have a different opinion or judgment in regard to the action of the agency is not a sufficient ground for interference; judicial discretion may not be substituted for administrative discretion." Whether or not this Court believes that the objectives and operations of Gaudenzia are beneficial to the City of Philadelphia,* is not the standard by which this Court is to gauge its final determination. Our role in this case is to review the record in an effort to determine the existence of a reasonable basis upon which the minority members based their negative votes. We have carefully reviewed this record a number of times and cannot conclude that the two minority members capriciously abused their discretion. That conclusion precludes this Court from reversing the Board or the court below. There is ample testimony upon the record going to Gaudenzia's failure to meet all of the criteria as required by the Zoning Code of the City of Philadelphia, Section 14-1803, and the

---

* We note in the record the presence of evidence that the objectives and programs of *Gaudenzia* will be of great benefit to the City in the handling of its massive drug addiction problems. Regretfully, such considerations have no place in our review of the exercise of discretion by the Board.

minority members were well within their discretion to find such evidence competent and credible and to base their negative votes thereon.

In view of the above analysis, we affirm the Order of the court below.